But he is with us on the phone via the conference call. So he will be participating in today's session. We have a number of cases submitted today on the briefs without argument. I'll just note them for the record. Mann v. New York Life. Usher v. The County of Sacramento. Hardwell v. Intel Corporation. And Berry v. Chevron U.S.A. These are two cases for argument today. We understand one of the counsel in the first case, Singh v. Ashcroft, hasn't arrived yet. So we're going to turn to the next, last case on the calendar for argument. Jespersen v. Harrah's Operating Company. Ready to proceed? Let's see, who's the appellant? Plaintiff's the appellant, right? All right. Judge Tashim, I wonder if the microphone can be turned up a little louder or perhaps people could speak into it a little more directly. Okay, then let me know for the clerk. This is a 20-minute argument, right? Okay. Go ahead. If it please the Court, my name is Jennifer Pizer. I represent the plaintiff and appellant in this action, Darlene Jespersen. Ms. Jespersen is here today to hear the argument. I'd like to reserve five minutes at the end, if I might. All right, fine. But keep track of the timer on the lectern there. Okay. Go ahead. Your Honors, we're here today for a de novo review of a summary judgment granted erroneously against Plaintiff Jespersen. There were multiple errors of law that I'd like to highlight briefly for the Court. First of all, there were errors concerning the evaluation of the evidence. The district court engaged in speculation specifically as to the burdens that might or might not be imposed on men subjected to the appearance code at issue in the case, specifically whether there are any men who want to wear makeup and are significantly burdened by the prohibition against men in makeup. Answer to that, there's nothing in the record to indicate either way, is there? That's exactly right, Your Honor. And without any evidence, the Court was not in a position to weigh that evidence and make a factual determination on the point. The Court, in any event, shouldn't weigh the evidence on summary judgment. But on summary judgment, it's your burden to prove discrimination, right? That's correct, Your Honor. And Plaintiff Jespersen submitted significant evidence explaining the burdens on her and why this was sex discrimination. And there wasn't any evidence contrary to her evidence that would show that the burdens were not greater on women in violation of the case law. What's the evidence of discrimination? Your Honor, the policy itself facially makes a distinction based on sex. There are rules that apply to women, different rules that apply to men. Isn't that in conformity with the circuit law and the, you know, the equal burdens test? Well, the circuit law, Your Honor, says that there can be some differences in dress codes, but they must be equally burdensome. And Plaintiff Jespersen explained why the burdens on her, why she was burdened. Well, what's the evidence that supports that assertion? Her testimony. That the burdens were unequal. Yes, Your Honor. Her testimony explained how it interfered with her doing her job, how it changed the way people interacted with her, and how she felt in precisely the way the plaintiff said her. You see, the problem is that's her subjective reaction, but it doesn't really go to burden. In the sense used in the case law. It might be a psychological burden, but, you know. Well, I don't think there's really a meaningful difference between the impact on her as she testified to it, and the impact on women as described in the Carroll case, which this court had adopted in Girdham, about uniforms that women were required to wear, the way it affected them, which should be evaluated. I mean, it would be odd to say that the impact on an employee and employee's testimony about that impact would be inappropriate evidence. It seems to me it would be very appropriate evidence. Also, if you look at the Carroll case for guidance, the way the court seemed to do that test was to evaluate it, one might say, from an objective standpoint, what is required, which you can see from looking at the policy and just from common sense, knowing that being required to purchase cosmetics and apply them is going to be more burdensome than not doing so. I think the Supreme Court has been clear in the Price Waterhouse case that you don't need expert testimony to know if somebody is required to do something that is stereotyped. That's something that can be considered just because we know about that. So her testimony would be important. But then if you look at the way the analysis was done in the Carroll case, again, the court seemed to be looking at the way women as a group, one might say, the perspective of reasonable people subjected to this requirement, would experience that. Now, they didn't use the language and the exact test that's used in the sexual harassment cases or the harassment on other basis. But it seems to be the same kind of analysis. So a person testifying about the impact would be important, and we have that here. And then assessing whether that seems to be a reasonable reaction, it's just like in Carroll, where the women are required to do something that marks them as being different, and then that can change the way their co-workers or their customers react to them. Now, exactly how people react to that seems to me is absolutely a factual question, and it wasn't appropriate for the trial court to make that evaluation himself and to not give the non-moving party the benefit of the reasonable inferences that could be drawn. If you look at the way the analysis has been done in these cases, again, in particular looking at Carroll, and I keep bringing us back to that because it seems to me that the women beverage servers here are being required to put a uniform on their face, and men aren't. They're required to change the look of their face. So both groups of employees wear a uniform on their bodies. Only women wear a uniform on their face. That makes them look different from the way they would normally look. Again, even though that's so, I still haven't seen the evidence of equal burden in the record. What is the evidence of unequal burden? In other words, that women are, in some substantial way, more burdened than men by the grooming policy. Yes, Your Honor. Well, I think the best evidence is right there on the face of the policy, because the policy itself tells women what they need to do. It's very specific. On the face of the policy, then, it's just as open to the district court to interpret it as it is to you, isn't it? Well, I think you see what the policy is. You see that it's different. And then it's going to be a factual question. And Darlene Jesperson spoke about what she had to do and how it made her feel, that she felt terribly demeaned and humiliated. A jury should have an opportunity to evaluate that and decide whether that's an appropriate reaction, a reasonable reaction, in just the same way that we've done in the other cases, Your Honor. It seems to me to decide as a matter of law. I suppose a male worker was supposed to say, and I forgot the name of the case as well, wearing a necktie makes me feel humiliated. I mean, is that evidence of an unequal burden? Well, that's a very good question, Your Honor. And I think what we do is, looking at the cases, well, start with the statute. The language of the statute is that there's a difference in term that applies to an individual because of their sex or race or national origin. Then you look to see whether that has adversely affected their status as an employee or if it's deprived them of an employment opportunity. So the male employee would have the burden, just as Doreen Jesperson has had, to show how his status is adversely affected. Seems to me the case law is overwhelmingly clear, starting from all the Supreme Court cases, that the prohibition against sex discrimination is about protecting individuals from being treated differently because of their sex. And the way that sex stereotypes have been used to prevent women in particular from having employment opportunities or being subjected to different treatment based on ideas about women, and in particular, that women need to be attractive, they need to be alluring, the same way Anne Hopkins was supposed to be ladylike as well as being an effective business person, that type of stereotype has been very harmful to women, just as the statute says it's affected their status in the workplace. Now, that was Doreen Jesperson's testimony. A man who doesn't want to wear a necktie would have to show, or wanted to wear his hair long, would have to show that his status in the workplace was affected, or that his job, just as the statute says. Well, that's my point, though. What's the showing here besides the subjective reaction of the plaintiff? Well, I submit to you, Your Honor, that the subjective reaction is quite important because Darlene Jesperson couldn't do this. But you just said it was not enough for the man with the necktie. She, her testimony was that when she had to put on the makeup, it made her unable to do her job because she was so upset, and because it changed the way people looked at her. She was taken less seriously. Now, her job as a bartender, and we see this just in the job description, which is in the record starting at page 83, describes the range of things that a bartender needs to do. And among those things is monitoring guest consumption of alcohol and intervening as needed according to guidelines. I submit that it's reasonable, and this is something that a jury should have been deciding, whether a woman who's required to wear makeup and who experiences that she's not being taken seriously may have a very much harder time controlling customers who are being unruly, who are being difficult. That's part of her job. Now, these are all factual questions, but to decide as a matter of law that no reasonable jury could decide that a woman who was, number one, being required to present herself in a way that was very difficult to her because of who she is as a woman, that wearing makeup is alien to her, she's never done it, she tried it in good faith for a number of weeks, but it was so alien to her sense of her gender and how she presents in the world that she couldn't do her job. It interfered with how people interacted with her and how she interacted with them. Now, at that point, the burden shifts to Harris to explain why they must have it, why the job duties as described in the job description, starting on page 83 in the record, those duties of providing fast service, preparing drinks, maintaining the equipment, operating the cash register, why do those duties require that a woman have to wear makeup if it makes her feel so uncomfortable because that's not her sense of herself as a woman and it obscures her face and makes her look like a different person so she doesn't feel like herself. She has to do this. Now, she's not an actor, she's not performing, she doesn't have to be in character. Why does she need to wear a mask as opposed to looking like herself? Suppose she doesn't want to wear stockings, would that, you know, it upsets her, she finds it demeaning to wear stockings, would she have a claim there because men don't have to wear stockings? Judge Silverman, the test would be exactly the same. She would need to show why it interfered with her sense of her status and her job opportunities. She would need to put forward that evidence. An employer would need to show why stockings are necessary to do the job and then a jury would need to decide, just as you would in any case. Now, there's an affidavit of Rimey, R-E-I-M-E-Y, I'm not sure how to pronounce that, Rimey Martin, who says that makeup on employees in the hotel and casino industry for female employees promotes a professional appearance. Yes, Your Honor, that was her paragraph. And what refutes that? Well, Darlene Jesperson did this job very well for 21 years and she had very excellent employment reviews that said she, in fact, she got awards for being such a good bartender. So I submit this is exactly like the airline cases in which the airlines put on all sorts of evidence that they considered to be expert about how their businesses would suffer if the stewardesses weren't young, unmarried, and thin. No, no, she didn't say it would suffer. She said this is what constitutes good grooming and a professional appearance of a female employee in the hotel and casino industry. Yes, Your Honor, but the legal standard is not what an employer may want to impose on employees based on their idea of what their customers might like or for whatever other reason, but are they treating people differently based on their sex and do they have a good reason for doing that? If Harris decides they want to have a more professional image, they don't just want to be some cheapy little casino. They want to have a high-class, elegant image. Can they do that by requiring that the employees sort of dress up and spiff up their act a little bit? They certainly can, Your Honor, as long as the cleaning up their act or the brightening up their act doesn't involve invidious stereotypes or restricting burdensome stereotypes that violate the statute. Can they require female employees to wear skirts? Your Honor, we can look at a lot of the different requirements and test whether they are or aren't necessary in a particular setting. This policy is an easy one because this makeup requirement involves many parts. They have to be done exactly the same way. The employee isn't even allowed to decide how to put the makeup on. A consultant, a stranger, tells them exactly how it has to be and then they have to look like they're photographed exactly the same way every day. So if we look at this requirement in this context, it can't be justified. In the same way, if you looked at the airline cases, they had many different sorts of requirements on their stewardesses and each one was tested and the airline had to explain why the women had to be thin, why they had to be single. Maybe in some settings, a skirt might be essential. I'm not sure what would justify that requirement to tell you the truth, but it would be up to an employer who wanted to have that requirement to explain why women can't do whatever the job is in a neat set of slacks. The point is professionalism needs to be about neat, clean and a neutral standard that respects people's right to be individuals and not be judged by their sex or their race or their religion. I mean, for example, you couldn't have an employer that was insisting on everybody dressing a certain way based on their race. Even if it was a nice outfit, you couldn't color code it, you couldn't require that people wear a particular sort of a badge that violates the statute. And when they want to do something like that, it's their burden to describe why they need it. I think that the case law talking about the harm of stereotypes is very clear. And I would refer the court to the Manhart case starting in 1978, that talks about the statute protecting individuals, not groups. And so if an individual doesn't have a particular femininity or masculinity that is of a standard brand that the employer likes, the employer isn't allowed to require that employee to present their femininity or their masculinity in a particular way I mean, certainly you can have sex segregation of jobs if the job involves some kind of physical privacy. The case law is clear about that. But when it comes to appearances, which are subjective, which can be very restrictive, then there needs to be a really good justification. I submit, for example, Your Honor, an analogy might be if a restaurant, I don't know where it would be in Phoenix, but in San Francisco here, it might be the Castro or in West Hollywood in Los Angeles, decided that they would have a lot more lunch customers if they required all the male waiters to wear really tight pants because the customers would like that. Because, and it would be stylish and they like that look. They don't care what the women wear because most of the clientele don't care what the women wear. But they want the men to be particularly good looking and to be sexually alluring. That would violate the statute. Now, if they had a rule that said all the employees need to be healthy and fit and clean and come to work nicely groomed, that would be fine because it's not using sex to make a distinction or a restricting stereotype to make a distinction. Again, unless they have a really good reason and they don't have one here. I'd like to reserve the balance of my time. Thank you. Thank you. Thank you. May it please the court. My name is Veronica Arachiveta-Hall and I represent the Appellee Harris Operating Company. We request this court to affirm the order of the district court granting summary judgment in favor of Harris. Today, I will address two points. Whether the district court applied the correct law and number two, whether the district court correctly applied that law to the instant facts. We submit that both questions must be answered affirmatively. At issue here are Harris' sex-based appearance standards. Ms. Jesperson objects particularly to the makeup requirement. Ms. Jesperson advocates a position of absolute equality. Under her theory of the case, there could be no sex-based distinctions in employment because inevitably they would all be rooted in gender stereotypes. Well, I don't think that's her theory. You know, her theory is true. You can require, say, good, clean, neat grooming standards but you can't force women to wear makeup. I think that's what it comes down to. So it's not that you can't have any standards. Well, essentially, Your Honor. I don't think. Go ahead. Essentially, Your Honor, then what she is saying that you can't have dress codes based on gender differences. Employers' hands would be tied. They could only mandate. I'm not sure that's true either because I think part of the brief, at least in the brief, the claim is it's an unequal burden. It burdens women much more than it burdens the men employees, the grooming standards. Isn't that the plaintiff's case, in part? That is her theory of the case, Your Honor. Why doesn't that play out, though? Why doesn't it play out? Let's say in a different context that because of an employer's idea about safety, that an employer required only women to wear safety suits because the employer said, well, women are more prone to injury. Certainly, that wouldn't be permissible. That would be an unequal burden, saying that women must wear safety suits, and particularly because of the time taken to put one on. Why isn't this the same situation, that you're requiring women to spend a fair amount of time to dress for work, the time that's not required of men, and putting them to a fair amount of expense, which men aren't? Let me address the first part of your question regarding the safety suits. I believe that that situation is more similar to the case of Pricewaterhouse v. Hopkins, in which the United States Supreme Court saw that an individual, that a gender stereotype, was used to evaluate the individual's performance. The uniform certainly isn't unique to males or females. And therefore, you'd be using a harmful gender stereotype to impose an unequal burden on women. In this case, we're talking about an employer's right to require its employees to adhere to a specific dress code that is based on generally accepted social norms. In regards to the time and cost argument, there are equal burdens imposed by the makeup requirement for women versus a clean face or cleanly groomed face requirement for men. Obviously, the person has to shave. They have to keep their hair cut in order to comply. So there are equal burdens based upon gender norms. And the courts have generally said They don't allow beards at hair house? Your Honor, they do allow beards. The question is what There's nothing in the grooming standard that prohibits facial hair, is there? So men can have beards, right? Your Honor, men can have facial hair. They can have facial hair, but it needs to be neatly groomed. I didn't see anything in the grooming standard about facial hair. But anyway, go ahead. Your Honor, I guess I would interpret that there is no specific prohibition against it. And then the part where it says that you can't have any fattish hairstyles and it has to be neatly groomed. But I think it's a matter of I realize there's no testimony in this case or evidence offered on the burdens on men. But the fact is you do have a requirement that women wear makeup and men may not wear makeup. So just from that perspective, I mean, I assume that everybody, the equal burden is everybody has to be clean and neat and so forth. What, how, I mean, I guess I find it difficult to see how the burden doesn't shift toward the women. It's an unequal burden in this case. Explain to me how you think on this record that there's an equal burden on men. Your Honor, I guess I take the analysis from the cases involving ties where you have a gender norm where men in professional settings wear ties. Because it's based on generally accepted social norms, it's acceptable when you. Well, I guess that's not quite my question. I mean, I understand your argument that to justify the policy. But strictly speaking about burdens, you have to concede that the burden in this instance falls on women unequally as compared with men. Now, whether or not it's acceptable is perhaps a whole different issue. But I think in terms of time, in terms of expense, the record is at least unrefuted that it's going to take time. And it's a considerable expense to women. And that requirement is not made of men. There are theoretical burdens imposed by any standard. And here, a standard requires something of women. It forbids something of men. It was brought up regarding whether men, whether some men would like to wear makeup. And I'd like to address that argument. Although there's no direct testimony of that, obviously, you can apply your common sense in this. And also, Ms. Jesperson's admission in the underlying briefs that in modern society, both men and women wear makeup. Therefore, there would be that burden on some males. As to the time and cost argument, Ms. Jesperson paints a picture that makeup has to be exacting, that it has to be overdone, that it is rigid. Well, a fair reading of the appearance standards demonstrates that the employee has quite a bit of discretion in the application of makeup.  And that's why it's important to be able to use the makeup in that a consultant was brought in to help people with the application of makeup. Well, based on what the consultant said, how long do you think it would take an average person to apply the makeup in the way that was advocated by the consultant? A half hour? 15 minutes? Your Honor, I've heard, I've read many things about the five-minute makeup application. Is that, I mean, my question was, in the record, with respect to the consultant, do you have anything that indicates how long the recommended time would be, given the consultant? There's nothing regarding the recommended time. The five-minute makeup is not part of the consultant's advocacy as to standard makeup standards, is it, or am I mistaken on that? No, there is no time requirement for the application makeup. That's left within the discretion of the individual. Let me make sure I'm clear with Judge Thomas's question. There is nothing in the record about how long it takes to put the makeup on, is that right? That's correct, Your Honor. Nothing in the record about how much it costs? There's nothing in the record. There is improper citations to that this is a billion-dollar industry, but that doesn't indicate what specifically it would cost to comply. Nothing in the record set forth by Ms. Jespersen. Thank you. Well, you know, is that a subject, is that a matter of such common knowledge that we can take judicial notice of? In other words, it takes time to do a decent job of putting on makeup, more than it would take somebody who doesn't use makeup to get ready? Not necessarily, Your Honor. You don't think it's a matter of common knowledge? I guess I was unsure of your question. Is it a matter of common knowledge of which we can take judicial notice without any? I agree that there's no evidence in the record on this, either way, either on the average how many minutes it would take a woman to comply with the hair and makeup requirement on the one hand, or how much it would cost to buy the supplies. But couldn't we take judicial notice that it does take more time to comply with that than to comply with the grooming policy for men? I don't think that would be appropriate, Your Honor. The burden carries the burden of proof on summary judgment. And therefore, if it's not in the record, you should hold Ms. Jespersen to the same standard. If the district court couldn't speculate, then the appellate court should not as well. You say it would or wouldn't? I think it did speculate. In other words, he said, Judge Reed said, well, you know, the burden is equal. You're right. It takes a, you know, it falls equally on men and women. Didn't he say that? Your Honor, I would agree that that is what Judge Reed held. What I just said, and maybe it's difficult with the microphones, is that Ms. Jespersen should be held to the standard which she advocates here, in which she says the district court should not be allowed to speculate. Therefore, she shouldn't be allowed to speculate the other way at this appellate level. Well, we know that the burden of cost and expense is unequal, because the burden of cost and time is zero for men. They are forbidden to spend any money on makeup, and they are forbidden to spend any time applying makeup. So they have zero expense, and there's zero time involved. So the question on the other side that you raise is whether there's enough in this record to say that's a significantly unequal burden. And you say we can't apply common sense to that. Is that what you're saying? My position is that you should apply common sense. However, if Ms. Jespersen argues that that's speculation and you can't apply common sense, then she should be held to that standard. My argument is not that there is no evidence in the record that there is no time or burden required on men. You have to look at the context of which the appearance standard is applied. And also, it is appropriate to look at the overall appearance standards to determine whether they are even-handed. Right now, we're looking at isolation at the makeup requirement. And the flip side of that for males is that males basically have to be clean and groomed. Well, there is time and burden. They have to be clean and groomed, too, right? That's my point, that there is burdens on both sides. No, there's an equal requirement of all employees being clean and groomed. So that's a wash, isn't it? Perhaps, perhaps, Your Honor. And I want to take it beyond the makeup versus the clean face requirement. And that's the way Ms. Jespersen has characterized it, that it's a clean face requirement for men. Judge Reed also looked at the other appearance standards, looked at hair length, and recognized that men have to have short hair, whereas women can have short or long hair. They can wear their hair in a variety of styles. He also looked at the nail polish requirement. And that requirement prohibited men from wearing nail polish, whereas women can wear nail polish. And the footwear requirement, which was essentially the same, that both men and women wear leather non-skid footwear. So if you look at the appearance standards at a whole, they are even-handed. Men have to expend time and money in keeping their hair short. They are prohibited from doing certain things, which perhaps some men would like to do. And they're essentially even-handed. Let me turn to another topic. If I'm understanding your argument correctly, are you conceding that this is a gender stereotyping requirement? That basically you're saying you're reinforcing gender stereotypes in your policy, is that right? I find it difficult to concede gender stereotyping because it's not necessarily defined. Well, what did you mean when you said cultural norms of dress applicable to the sex of the person? One of the cases that was just discussed by Ms. Jesperson's counsel. I mean, an easy cultural norm, for instance, if your dress policy said, well, men can wear dresses, huh? That would be conforming to a cultural norm, wouldn't it? If there was a cultural norm that- If part of your policy said, men and boys can't wear dresses, although it doesn't say that, I suppose they could. But if it did say that, it would be, in effect, conforming to a cultural norm, right? I would agree with that. My question is, how much more restrictive and something as broad as that can you impose before you cross the line to what Judge Thomas called a stereotype, right? Which is, you know, sort of the, which is the term Price Waterhouse uses in sort of a derogatory sense, right? That's right, Your Honor. In Price Waterhouse, the Supreme Court recognized that gender stereotyping is not a cause of action per se, but rather it can be evidence of discriminatory intent. Whereas here, whether you use the word stereotype or cultural norm, it's not being used negatively, and it's being used in a neutral manner. As Justice O'Connor pointed out- I guess, to get back to my question, though, whether or not, whatever legal overlay you may want to put on it, basically, and whether you call it cultural norm or not, what you're trying to do is, in Harrah's, is to reinforce gender stereotypes by your dress policy, isn't it? Now, you may argue that's permissible, but basically that's what you're doing, aren't you? That's correct, Your Honor, and- Well, I understood you. I thought what you meant by your argument was that it's generally accepted in society that most women, a significant percentage of women, wear makeup in a professional setting, as opposed to, say, a requirement that women employees wear see-through blouses, which would generally be regarded as offensive by most people. That's what I understood your argument to be. Do I misunderstand it? No, you don't, Your Honor. You just stated it more eloquently. But let me follow up then with this question on Judge Thompson's question. Part of the theory, I don't know how to express it, but I think part of the theory underlying the plaintiff's case is that Price Waterhouse has sort of undercut the vitality of the older cases that the district court relied on in reaching its conclusion, right? Baker, Willingham, and those older cases. What is your response to that? That Price Waterhouse is not irreconcilable with the unequal burdens test. Price Waterhouse recognized how gender stereotypes can be evidence of discriminatory intent, which I keep repeating. However, this court has recently considered Price Waterhouse in Nichols versus Azteca, which is a 2001 decision. In that case, evidence of gender stereotyping was found to be evidence of discriminatory intent in a same-sex sexual harassment case. However, the court was very careful to point out that not all sex-based distinctions are actionable. Those that are reasonable and that distinguish based upon sex are acceptable and do not violate Title VII. In addition, Frank versus United Airlines. Is the reasonability a question for the jury, though? You see, that's the, you know, we know in post-Nichols that gender stereotyping may form the basis of a cause of action, and probably the Rene case, if you read between the lines, supports that as well. But the key is whether or not those restrictions are reasonable. Tell me why you think that is susceptible of a summary judgment decision. The standard that I would use for reasonable in order to demonstrate that there is nothing in the record that demonstrates any issues of fact, I would tie that back to Carroll. And in Carroll, the court stated that it was appropriate to base appearance standards on commonly accepted social norms and reasonably related to the employer's business. And we have both of those here. There is undisputed evidence of that. And therefore, I would submit that it's not a question that should be submitted to the jury because there is nothing in the record otherwise. What you just said, isn't that more of a VFOQ defense? No, Your Honor. I think that goes more towards the equal burdens analysis. And Ms. Jesperson, of course, argues that Harris should have to demonstrate a VFOQ, but that's putting the cart before the horse. If you demonstrate even-handedness, then you never get to the VFOQ. And the district court didn't answer that question below because they felt, with the record, that there was a demonstration of even-handedness. All right. Thank you. Thank you. Ms. Rubato. Thank you. If it pleases the court, a couple of quick points. We submit that there are particular legal errors that would be helpful for the court to address in a remand to the trial court, in particular to clarify that immutability is not considered a relevant characteristic or feature in the Title VII analysis at this point. These cases about appearance standards are all, or many of them, are about things that are mutable, and the question is whether the employer has the right to require a particular mutation, if you will. As Your Honor was saying about the Nichols case, I want to highlight that in that footnote, precisely as you said, the question is whether a particular appearance requirement is reasonable or not. And we submit that that question of reasonableness as a legal matter needs to incorporate the law about the effect on employees of harmful sex stereotypes. That will naturally, most often, require a jury determination, but certainly the question of harmful stereotypes needs to be in that consideration of whether something's reasonable, as well as things like time, cost, and the range of other things that the cases have spoken about. I want to emphasize that this analysis needs to be taken from the perspective of the employees who are affected, and as we just had the discussion with the present counsel about the role of what an employer may want, and that certainly comes into play when you're on a BFOQ question, but when you're just looking at burdens on employees, you need to look at it from the employee's perspective. If you then get to a BFOQ question, then it is not, as counsel said, whether something is reasonably related to a business, but rather, according to the case law, whether it's essential to a core business purpose, as the cases say. Wanted to disagree with counsel about whether the female beverage servers have any discretion in terms of the makeup. They have to look like their personal best photo every day, so they look- Don't the men have to do that, too? Don't the men have to have a photograph taken? They have to have a photograph taken, yes, but the issue is, in terms of the makeup, they need to, whether there's discretion about how to apply the makeup, the women and only women have to do that. No, but that gets us back to the makeup problem, but the photograph is uniform. Both men and women have to have makeup and also have to look their personal best. Yes, all employees have to look their personal best and conform to the photo, and we don't argue with the idea that there's standardization or uniformity. The question is the element of the uniform that applies only to women's faces that says that all men's faces are fine if they're clean and they look like themselves, and no women are acceptable, professional, competent, unless they change their facial look. That's the demeaning message that we believe is squarely within the case law, the message to the employee that she's not okay, she's not professional, unless she looks different. Male employee would have a claim, like Ms. Jesperson under Title VII, if a male employee wanted to wear makeup? That flags two issues, Your Honor. But there has to be, yes, huh? Not necessarily, and here's why. In the Gurdon case, the court talks about burdens that are significant. In other words, the law distinguishes here, as in many situations, from a restriction that's trivial and one that's significant enough to create an actionable claim. The male employee would have to show, referencing the statute, that his status or his job opportunities are adversely affected in a way that's significant. I think the male hair length cases and the tie cases go into that category, that for a male professional being required to wear a tie is not going, that stereotype doesn't demean his professional stature. Now, you need to look at that in a particular context, of course. And as a hope- But doesn't that get to Ms. Hall's point that makeup is a generally accepted social norm? That's why it doesn't demean. No, I would disagree, Your Honor. The Title VII case law about sex stereotypes is all about whether particular stereotypes limit job opportunities. The fact that they may be common, just like notions that women ought to be thin in order to be attractive, doesn't, that doesn't answer the question. So for a man who is challenging that he can't wear makeup, he needs to show why he's harmed in his particular job situation. He might have a good reason that he's harmed if, in fact, he's a transgender woman. People think he's a man and he's harmed based on that. That's not this case, though. Darlene is a woman who is required to look more feminine, just like Ann Hopkins. She was fired. It's not a theory. She lost her job of 21 years despite excellent job performance because she didn't look feminine enough. And in that sense, it's indistinguishable from the Price Waterhouse case. It's that sex discrimination. A man who wants to complain about a restriction on him needs to show how he is harmed and whether that harm is justified by a business necessity. Let me ask you a question along those lines. What difference do you think it makes in this case that we're talking about a termination versus a failure to hire? Because you've got, obviously in this case, you've got a fairly sympathetic plaintiff, you've got a 20-year employee who gets fired because of a failure to conform to a new standard. It's certainly different in terms of the ease of proof because there's a record showing how well she did the job. It doesn't necessarily make any difference, though, if the policy was written that a woman won't be hired, and that's true here. She's not gonna be hired unless she's willing to present a particular brand of femininity. It seems to me as a legal matter, it makes no difference. The question is, what is the reason? What's the business need for that restriction that treats women not as individuals as the statute requires, but as a member of a group where all members of the group need to be packaged a particular way, not having a neutral standard like neat, clean, professional. We have no quarrel with restriction in the policy against faddish hairstyles, no tattoos, other things that apply to everybody to say let's have a professional look. But women don't have to alter their appearance to be attractive in this particular way, to be professional. And that's what was so demeaning to Darlene Jesperson after 21 years of excellent service, to be told she was unprofessional, she's incompetent. It didn't matter how good she was at doing her job because she didn't look attractive enough in a particular way that's just not her. So in that sense, like with Anne Hopkins, she'd worked so hard, she did her business job, but because she wasn't ladylike enough, she was critiqued. Now, unlike Anne Hopkins' case, this one is much easier because there were no problems with Darlene Jesperson's performance. It's not a mixed motive case. It's entirely clear why she was fired. And it only had to do with her. Look, when the men with whom she worked for all those years, they still have their jobs. If she were male, she'd still be working at Harris giving great service. Again, let's highlight the context is the sports bar. She was working in the sports bar. She wasn't an erotic dancer. She wasn't performing. She wasn't at Disneyland, whatever Disneyland involves. I'm afraid I didn't fully understand the reference in the brief. But the point was the men at the sports bar did the same job that she did. She did it well, the customers liked her,  that wasn't necessary to do the job, she was fired. So it's not an abstract claim. That raises another question, which we may or may not reach. But as I understand it, she was given the opportunity to move to another position and she declined that offer, right? That didn't require, that didn't have make-up requirement. Does that impact your case at all? Absolutely not, Your Honor, it's entirely irrelevant. You know, she wasn't fired without alternative, right? She was fired. The test isn't whether a person's fired without alternatives, it's whether the person was fired. That was different treatment based on sex. The men weren't fired. But especially if you look at that list of jobs that's in the record, Your Honor, you see how silly that point is. A bunch of those jobs are things that she plainly wouldn't have been qualified for. I mean, one of them requires that the applicant be male, for heaven's sakes. Some of the other ones, whether to be an engineer, whether to be an accountant, whether to work on the computer systems, to drive a truck, I mean, there was no reason to think she could do a bunch of those jobs. And as to the other ones... She never even inquired about any of those, right? It's not her responsibility to do so, Your Honor. She was doing her job. And the statute says, can an employer take an adverse job and... Your position, plain and simple, is not a responsibility. It's absolutely not a responsibility. Her job was to do her job, which she did. I accept that as your position, Your Honor. You can see you're four minutes over, right? We appreciate your argument on both sides. I don't think it's an easy case myself. I don't know how the others on the panel think, but the case is submitted, and we thank you for your argument. Thank you very much. Thank you, Your Honors. All right, we have one more case on the argument, Gail. Now, I don't know if counsel's here yet. Let me call and see what happens. It's Harjinder Singh versus Ashcroft. Are both counsel here now? Looks like we are. Okay. You both are? Yeah. Good. Yes. Mr. Siguenza and the clerk will help you speak. Oh, do you need to go to the other? You're here for the, who are you? We are for petitioner counsel, Your Honor. Joseph Siguenza. All right. You're Mr. Siguenza for the petitioner, all right. Then what we'll do is, the counsel went to argue another case before another panel, right? The government counsel, right? So we'll take a recess, and the clerk will let us know when the government counsel is available. We'll get there as soon as we can, all right? In the meantime, I think you can try to get us Judge Tillerman in the conference room so we can conference about these other cases, okay? Thank you. Okay, thank you. We'll stand in recess at this time.
judges: Tashima, Thomas, Silverman